ACEQUIA, INC., Plaintiff,

v.

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,**
Defendant.

No. 98 C 1100.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 1, 1999.

Daniel Frank Lanciloti, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Michael J. O'Rourke, Mitchell Bruce Katten, Michael C. Moody, Andrew Neal Levine, Kelly A. McCloskey, Limo T. Cherian, O'Rourke, McCloskey & Moody, Chicago, IL, Steven D. Cundra, O'Rourke & Cundra, Washington, DC, for plaintiff.

Joanne Angeline Smet, Securities & Exchange Commission, Chicago, IL, Alan Scott Gilbert, Sonnenschein, Nath & Rosenthal, Chicago, IL, Michael J. Lawson, Michael D. Early, Steefel, Levitt & Weiss, San Francisco, CA, for defendant.

## MEMORANDUM AND ORDER

BUCKLO, District Judge.

Plaintiff Acequia, Inc. is an Idaho corporation. It owns farm land with improvements in Idaho. Defendant The Prudential Insurance Company of America is a New Jersey corporation. It holds a $4,000,000 installment note dated June 28, 1977, executed by Acequia and Vernon Clinton, individually, in favor of Prudential, and a mortgage dated June 28, 1977, executed by Acequia to secure the foregoing indebtedness.[1]

In 1977, Prudential made a $4 million loan to Acequia (the "Loan"). The Loan was evidenced by an Installment Note dated June 28, 1977, and secured by a first mortgage against farmland and related personal property and fixtures owned by Acequia located in Idaho (the "Property").

Acequia defaulted on its payment obligations in March 1980. Prudential filed a foreclosure action in Idaho state court in 1981. Prior to entry of judgment in favor of Prudential, the foreclosure action was stayed by Acequia's Chapter 11 bankruptcy filing on July 2, 1982 in the United States Bankruptcy Court for the District of Idaho, Case No. 82–01238. On March 19, 1984, Acequia's Second Amended Plan of Reorganization, as Modified (the "Plan"), was confirmed by the Bankruptcy Court.

---

1. This court has original jurisdiction of this case under 28 U.S.C. § 1332 based upon the parties' complete diversity of citizenship and because the amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000. Venue is proper in this District pursuant to 28 U.S.C. § 1391, since Prudential has managed the subject indebtedness from its office in Lisle, Illinois.

As a result of disputes arising after Plan confirmation, in 1987 Acequia filed a lender liability lawsuit against Prudential in Idaho state court. On June 23, 1989, Prudential and Acequia entered into a settlement agreement (the "Settlement Agreement") to resolve that litigation. Pursuant to the Settlement Agreement, the parties executed amended loan documents, including an Amended and Restated Promissory Note dated July 1, 1989 for $4,500,000 (the "Note"), and an Amendment to Mortgage (the "Amended Mortgage"). Pursuant to the amended loan documents, Acequia was obligated to make annual payments to Prudential, and to pay off the remaining loan indebtedness on the June 1, 1997 maturity date of the Note. The parties also agreed upon a method of calculating partial release prices to be paid by Acequia to Prudential as parcels of the Acequia Property subject to Prudential's mortgage were sold.

Acequia failed to make the annual payments that came due on June 1, 1995 and on June 1, 1996, and also failed to pay off the Loan indebtedness on the June 1, 1997 maturity date. Acequia filed this action in Illinois state court just days before the June 1, 1997 maturity date of the Loan, and delayed service of that complaint for over seven months. Immediately after being served with that new lawsuit, on February 5, 1998, Prudential filed a foreclosure action in Idaho federal district court.

On August 16, 1999, I granted Prudential Insurance Company of. America's ("Prudential") motion for summary judgment and denied the cross motion of Acequia, Inc. Despite the fact that Prudential had labeled its motion one for "partial" summary judgment, there did not appear to be any remaining issues that would prevent judgment in this case, although I was not sure whether, apart from the arguments made by the parties in their cross motions, there were any accounting disputes. I referred the matter to Magistrate Judge Morton Denlow for a recommendation as to any accounting issues.

The parties appeared before Judge Denlow in early September. Subsequently, both parties have filed proposed draft orders. I have incorporated parts of Prudential's draft order in this order since it in turn incorporates my statements at the conclusion of oral argument in August.

Acequia's proposed order would provide that I enter summary judgment "regarding the 'accounting issues'" and otherwise dismiss the case without prejudice to the parties' right to raise any issues in the Idaho action. That is not, however, what I decided. The basic dispute between the parties is over Prudential's application of payments by Acequia on Prudential's loan. Acequia disagreed and filed suit in this court alleging that Prudential was guilty of breach of contract, fraud, and other torts in connection with its application of loan funds. After a great deal of feuding here and in Idaho, where Prudential sought to foreclose on Acequia's properties following default in loan payments, both sides sought summary judgment in this suit. The question to be decided, because it underlay all of Acequia's claims, was whether Prudential in fact misapplied the funds. That depended on the Settlement Agreement previously entered into between Acequia and Prudential. In deciding that Prudential was entitled to summary judgment, I ruled that the agreement is clear and that Prudential's application of funds was consistent with the agreement.

The Settlement Agreement set Acequia's debt as of July 1, 1989 at $4.5 million. Acequia's debt of $4.5 million was divided into two parts by the Settlement Agreement: a principal balance of $3.5 million which was denominated the Segment A Loan balance and a liquidated accrued but unpaid interest balance of $1.0 million, denominated the Segment B Loan balance. The Segment A Loan balance and the Segment B Loan balance were denominated "principal" under the Settlement Agreement; "interest" as used in the Settlement Agreement refers to interest ac-

cruing on the Loan balance from and after July 1, 1989. The Settlement Agreement also extended the maturity date of the loan from June 1, 1992 to June 1, 1997. The language of the Note is consistent with the Settlement Agreement with regard to these matters.

Pursuant to paragraph 8 of the Settlement Agreement and paragraph 1(A) of the Note, the $3.5 million Segment A Loan balance bears interest at the rate of 9.5% per annum. Pursuant to the Settlement Agreement, Acequia was required to make interest-only payments with respect to the Segment A Loan balance on June 1, 1990 and every June 1 thereafter through and including June 1, 1997, at which point the loan matured. Pursuant to the Settlement Agreement and the Note, besides the interest-only payments on the Segment A balance, Acequia was in addition required to make amortization payments of the then-existing Segment A balance, based on a 25–year amortization schedule, annually on June 1 of each year, commencing on June 1, 1994 through and including June 1, 1996.

As required by the Settlement Agreement and the Note, Prudential calculated Acequia's Segment A interest-only payment at 9.5 percent of the Segment A Loan balance. Pursuant to the Settlement Agreement and the Note, in addition, commencing on June 1, 1994, Prudential calculated a principal payment on the Segment A Loan balance on a 25–year amortization schedule.

Pursuant to paragraph 9 of the Settlement Agreement and paragraph 1(B)(ii) of the Note, Acequia was also required to make an interest-only payment on the $1.0 million Segment B Loan balance. The interest rate on the Segment B Loan balance was to be not less than 4 percent and not more than 9.5 percent annually. Acequia never provided information on the cash flow from the Segment B Property in order to determine what interest rate was to be used on the Segment B Loan balance. Prudential applied the minimum 4 percent per annum rate on the Segment B Loan balance. The interest-only payments on the Segment B Loan balance were due starting on June 1, 1990 and on each year thereafter through June 1, 1997.

Separate and apart from its annual payment obligations, Acequia was allowed, but not required, to sell parcels of its property which were subject to the Prudential mortgage. Prudential was required to consent to sale of Acequia's property subject to the Prudential mortgage as long as Prudential received the Total Release Price, as defined, for the parcel being sold. The Total Release Price consists of the Release Value for the parcel and the Release Interest Component. The Release Value for each parcel is specified in Exhibit 1 to the Settlement Agreement. The Release Interest Component is defined in paragraph 11 of the Settlement Agreement as the "proportional share of current an accrued interest allocable to that Release Value." The Release Values stated in Exhibit 1 to the Settlement Agreement do not change or vary based on the status of the loan. The Release Interest Component is the interest allocable to that Release Value. In arriving at the Release Interest Component of a parcel sale, interest is properly calculated based on the Release Value alone (at the applicable rate and default rate, depending upon whether the parcel is Segment A or Segment B parcel).

The Settlement Agreement also sets forth the procedure by which the Total Release Price, when it is received by Prudential, was to be applied to the Loan. The Release Value, which is the amount stated on Exhibit 1 of the Settlement Agreement, was to be applied to the Segment A Loan balance if the parcel sold is a Segment A property and to the Segment B Loan balance if the parcel sold is a Segment B property. Pursuant to the Settlement Agreement, the Segment A and Segment B Loan balances represent "principal" rather than any interest that accrued after July 1, 1989. Under the Settlement Agreement, the Release Interest Compo-

nent from a parcel sale was applied against the interest allocable to the portion of the Loan balance (that is, the Release Value) being repaid.

I concluded that Prudential's accounting methodology as set forth in Exhibits 1 and 6 to the Declaration of Christina L. Oysti filed on January 15, 1999 complied with the provisions of the Settlement Agreement regarding payments due and the application of such payments.[2] Neither is there, therefore, any disputed fact as to Acequia's claim that Prudential improperly blocked parcel sales proposed by Acequia.[3]

As noted above, all of Acequia's claims are premised on the accounting issues raised in Prudential's motion. Although labeled a motion for partial summary judgment, Prudential's motion did state that the granting of its motion should result in the entry of judgment in favor of Prudential. At the hearing on August 11, 1999, I noted that there appeared to be no remaining issues to be tried in this case. The court thereupon directed Acequia at the hearing on August 11, 1999 to file a further brief indicating that there were issues remaining to be adjudicated by this court which would preclude the entry of judgment in favor of Prudential if Acequia believed such issues remained. Acequia did not do so.

■ The court further directed that this matter be remanded to Judge Denlow for consideration as to whether or not there were mathematical errors in connection with Prudential's accounting. At a subsequent hearing before Judge Denlow, Acequia raised no mathematical errors in Prudential's accounting. Rather, it raised the issue of whether Prudential had failed to consent to a proposed 1997 parcel sale. I find that this issue was decided against Acequia in connection with Prudential's motion for partial summary judgment, where both parties presented factual and legal arguments on the issue.

■ Acequia having failed to respond to this court's directive to provide any factual or legal issues which would preclude the court from entering judgment in favor of Prudential, and Acequia having failed to raise any mathematical errors in Prudential's accounting submitted in support of its motion for partial summary judgment, the court has determined that no triable issues remain in this action. It is hereby ordered that summary judgment is granted in favor of defendant The Prudential Insurance Company of America and against plaintiff Acequia, Inc., and that judgment be entered in accordance with this order.[4]

2. I also concluded that there is no merit to Acequia's argument that Prudential never applied any funds to Acequia's account. The facts are undisputed that Prudential calculated amounts due from Acequia and Total Release Prices taking into account all funds paid by Acequia. The fact that Prudential kept the funds in a suspense account for its own purposes while this dispute has been pending does not create an issue of fact or law that prevents judgment being entered for Prudential.

3. The sales Acequia claims Prudential improperly "blocked" include: (1) Parcels 17 and 18C; (2) Parcel 10; (3) Parcels 2C and 2D; and (4) Parcels 7BW, 18 and 34A.

4. In entering judgment, I have considered the fact that following my August order granting Prudential's motion, a magistrate judge in Idaho recommended that Acequia's motion for summary judgment in that action be denied. That recommendation was subsequently adopted by the district court in Idaho. While the fact that somewhat parallel motions have been pending in Idaho and this court certainly calls in question my earlier decision not to transfer this action to Idaho, and most certainly has resulted in a duplication of effort, the decision in Idaho is not by its terms inconsistent with my ruling, although if the parties had brought my ruling to the attention of the Idaho court, I would guess the courts there would not have proceeded further on the motions. At any rate, my ruling on Pru-

dential's motion occurred first and it would be inappropriate to withdraw that ruling now.